## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

THE ESTATE OF TAYLOR LOWERY    )
BY AND THROUGH SPECIAL    )
ADMINISTRATOR DA'MABRIUS    )
DUNCAN AND L.L. THROUGH NEXT OF    )
FRIEND DA'MABRIUS DUNCAN,    )
    )
       Plaintiffs,    )
    )    Case No.
v.    )
    )    **JURY TRIAL DEMANDED**
CITY OF TOPEKA, KANSAS,    )
    )
Serve at: City Clerk, Brenda Younger    )
       215 SE 7th St. Rm. 166    )
       Topeka, KS 66603    )
    )
OFFICER MALCOLM GILLUM,    )
    )
Serve at: 215 Kansas Ave    )
       Alma, KS 66401    )
    )
OFFICER JUSTIN GOOD,    )
    )
Serve at: 320 S. Kansas Avenue    )
       Suite 100, Topeka, KS 66603    )
    )
OFFICER BRADLEY NETHERTON,    )
    )
Serve at: 320 S. Kansas Avenue    )
       Suite 100, Topeka, KS 66603    )
    )
SERGEANT SCOTT MCENTIRE,    )
    )
Serve at: 320 S. Kansas Avenue    )
       Suite 100 Topeka, KS 66603    )
    )
DETECTIVE ALEX WALL    )
    )
Serve at: 320 S. Kansas Avenue    )
       Suite 100 Topeka, KS 66603    )
    )
       Defendants.    )

**COMPLAINT**

Plaintiffs Da'Mabrius Duncan, as the Special Administrator of the Estate of Taylor Lowery and L.L., a minor, by and through her next friend Da'Mabrius Duncan, and for her causes of action against Defendants Justin Good, Bradley Netherton, Malcolm Gillum, Sergeant Scott McEntire, Detective Alex Wall, and the City of Topeka and state and allege as follows:

**Parties**

1.      Plaintiff Da'Mabrius Duncan has been appointed as the Special Administrator of the Estate of Taylor Lowery in Case No. SN-2023-PR-000481, District Court of Shawnee County, Kansas.  Da'Mabrius Duncan is an individual over the age of 18 and is a resident of Shawnee County, Kansas.

2.      Plaintiff L.L. is the surviving daughter of Decedent Taylor Lowery and is an heir at law to Taylor Lowery, entitled to bring a wrongful death action on behalf of Taylor Lowery's heirs pursuant to K.S.A. §60-1902 and K.S.A. §59-506.  L.L. is a resident of the State of Kansas.  Da'Mabrius Duncan is the mother of L.L. and has been appointed as the next friend of L.L. for purposes of prosecuting this action.

3.      Defendant Officer Justin Good (hereinafter "Officer Good") was at all relevant times a police officer with the Topeka, Kansas Police Department.  At all times relevant hereto, Officer Good was acting in the course and scope of his employment with the City of Topeka and was acting under the color of state law.  Upon information and belief, Officer Good resides in Shawnee County, Kansas

4.      Defendant Officer Bradley Netherton (hereinafter "Officer Netherton") was at all relevant times a police officer with the Topeka, Kansas Police Department.  At all times relevant hereto, Officer Netherton was acting in the course and scope of his employment with the City of

Topeka and was acting under the color of state law. Upon information and belief, Officer Netherton resides in Shawnee County, Kansas.

5.     Defendant Officer Malcolm Gillum (hereinafter "Officer Gillum") was at all relevant times a police officer with the Topeka, Kansas Police Department. At all times relevant hereto, Officer Gillum was acting in the course and scope of his employment with the City of Topeka and was acting under the color of state law. Upon information and belief, at the time of the alleged acts Officer Gillum was an officer in training with the Topeka Police Department. Upon information and belief, Officer Gillum resides in Wabaunsee County, Kansas.

6.     Defendant Sergeant Scott McEntire (hereinafter "Sergeant McEntire") was at all relevant times police officers with the Topeka, Kansas Police Department. . At all times relevant hereto, Sergeant McEntire was acting in the course and scope of his employment with the City of Topeka and was acting under the color of state law. Upon information and belief, at the time of the alleged acts Sergeant McEntire was a Sergeant with the Topeka Police Department. Upon information and belief, Sergeant McEntire resides in Shawnee County, Kansas.

7.     Defendant Detective Alexander Wall (hereinafter "Detective Wall") was at all relevant times police officers with the Topeka, Kansas Police Department. . At all times relevant hereto, Detective Wall was acting in the course and scope of his employment with the City of Topeka and was acting under the color of state law. Upon information and belief, at the time of the alleged acts Detective Wall was a Detective with the Topeka Police Department. Upon information and belief, Detective Wall resides in Shawnee County, Kansas.

8.     Officer Good, Officer Netherton, Detective Wall, Officer Gillum, Sergeant McEntire are collectively referred to as the "Officer Defendants."

9.      At all relevant times, the City of Topeka (herein after the "City") had responsibility for the Topeka Police Department as well as for the officers who serve in that department including the Officer Defendants.  The City had the full responsibility of managing the Topeka Police Department and more specifically, the hiring, promoting, training, supervising, disciplining, and firing of employees of the Topeka Police Department including the Officer Defendants.

10.      Defendant City is a municipality located in Shawnee County, Kansas.  Defendant City operated and had responsibility for the Topeka Police Department.  Defendant City is being sued for the actions of its employees who were operating in their official capacity pursuant to 42 U.S.C. §1983.  The City can be served by serving the City Clerk, Brenda Younger, 215 SE 7th St. Rm. 166, Topeka, Kansas 66603.

### Jurisdiction, Venue, and Timeliness

11.      Plaintiffs bring this action due to the wrongful death and violation of the deceased Taylor Lowery's civil rights under 42 U.S.C. §1983, 42 U.S.C. §1988, the Fourth Amendment and the Fourteenth Amendment to the United States Constitution as well as similar provisions of the Constitution of the State of Kansas when Taylor Lowery was shot and killed by the Officer Defendants in Topeka, Kansas.

12.      Jurisdiction is conferred by 28 U.S.C. §1343 which provides for original jurisdiction of this Court in any civil action to redress the deprivation under color of state law, statute or ordinance, regulation, custom or usage of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens and to recover damages under any Act of Congress providing for protection of civil rights. Plaintiffs' actions for damages are authorized by 42 U.S.C. §1983, 42 U.S.C. §1988, the Fourth Amendment and the Fourteenth Amendment to the United States Constitution.

4

13.     Plaintiffs hereby request supplemental jurisdiction of their state law claims pursuant to 28 U.S.C. §1367 as Plaintiffs' state law claims are so related to the claims giving rise to original jurisdiction in this Court that they form part of the same case or controversy under Article III of the United States Constitution.

14.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(a)(2) because the events or omissions giving rise to Plaintiffs' claims occurred in Kansas.

15.     In compliance with the Kansas Tort Claims Act, (K.S.A § 75-6101 and K.S.A § 12-105b(d)) Plaintiffs provided notice to the City of Topeka through their former attorney of record, attached as Exhibit A, about their claims and received no response from the City.  The City confirmed receipt of Plaintiffs' claim on November 20, 2023. Plaintiffs' 120-day period set forth by the statue expired on March 15, 2024.

16.     This action was originally filed on August 1, 2024, and was assigned case number 2:24-cv-02336-DDC-ADM.

17.     On or about May 30, 2025, Plaintiffs moved for dismissal without prejudice, not based on the merits of the case, in an unopposed motion that was granted on June 2, 2025.

18.     In compliance with the Kansas "Savings Statute," (K.S.A § 60-518), this new action based on identical facts and alleging the same claims, is filed within the six (6) month statutory deadline. Hence, the timeliness of this action is proper.

## Factual Allegations

19.     On or about October 13, 2022, Topeka police officers were dispatched to a residence located at 4842 S. Topeka Blvd. #6, Topeka, Kansas following a 911 call reporting a domestic disturbance at the residence.

20.     Upon information and belief, the woman inside the residence indicated that her brother had allegedly taken a substance and was not acting like himself, so she was concerned and

wanted her brother to leave the house.

21.     During the phone conversation with the 911 dispatcher, the woman indicated multiple times that she did not want the officers to hurt her brother but that she just wanted him out of her house.

22.     When the dispatcher asked the woman if the man was armed, she told the dispatcher that she did not want to tell them whether he had a weapon because she did not want the officer to shoot him.  The 911 dispatcher indicated that would not happen, so the woman stated that her brother was using a knife to try to pick a lock to acquire her car keys.

23.     Upon information and belief, the woman never indicated that her brother was being violent or threating anyone with the knife.

24.     Upon information and belief, between 12 a.m. and 1 a.m., two (2) Topeka Police Department officers arrived at the residence and knocked on the front door.

25.     Upon information and belief, the officers responding to the call were Officer Justin Good and Officer George Chiles.

26.     Upon information and belief, there was no response at the residence when the officers knocked, so Officer Good began attempting to kick in the door.

27.     Upon information and belief, a minor child opened the door and asked the officers what was going on and walked out of the house.  Officer Good and Officer Chiles then saw Taylor Lowery attempt to leave out a backdoor of the residence.

28.     Upon information and belief, Officer Good and Officer Chiles proceeded to chase Taylor Lowery around the home.

29.     Upon information and belief, as Taylor Lowery was outside of the home standing in the street, he was holding what appeared to be a knife and a wrench and he began to slowly walk around.

30.     Upon information and belief, there were no individuals near Taylor Lowery at that time.

31.     Officer Chiles and Officer Good held Taylor Lowery at gunpoint while instructing him to drop the knife.

32.     Upon information and belief, the apparent kitchen knife and wrench were clearly visible in Taylor Lowery's hands.

33.      Taylor Lowery then walked back towards the residence and entered through the open front door.

34.     After Taylor Lowery re-entered the house, Officer Good and Officer Chiles again began kicking in the door.

35.      After Officer Good and Chiles kicked in the door and gained entry, a woman from inside the home ran outside.

36.     Upon information and belief, Officer Good and Officer Chiles located Taylor Lowery at the back of the house near the back door.

37.     Taylor Lowery then exited the residence and got into a black SUV that was parked in the driveway of the home.

38.     Upon information and belief, at no time did Taylor Lowery threaten or harm Officer Good or Officer Chiles nor did Taylor Lowery demonstrate any violent or aggressive action toward Officer Good or Officer Chiles.

39.     Upon information and belief, at no time did Taylor Lowery make contact with any individuals, lunge at any person, or make any verbal threats.

40.     Upon information and belief, Taylor Lowery was never in striking distance of Officer Chiles and Officer Good.

41.     Upon information and belief, at no time during this pursuit did Officer Good nor

Officer Chiles discharge their service weapon.

42.     As Taylor Lowery climbed into the vehicle and backed out of the driveway, Officer Chiles and Officer Good continued to hold their police weapons, and as Taylor Lowery drove away the two officers ran to their patrol vehicles.

43.     Lowery then drove the black SUV to the Kwik Shop located at 4500 SW Topeka Blvd, Topeka, Kansas.

44.     Upon information and belief, Officer Chiles and Officer Good pursued Lowery in their police cruiser with its lights ignited.

45.     As the officers left the property, Officer Good radioed that "we are going to have" an aggravated assault on a law enforcement officer.

46.     Upon information and belief, while at the residence neither Officer Good nor Officer Chiles were harmed, attacked, or injured by Lowery.

47.     Upon information and belief, there was a "Signal 13" over the radio, which is a signal stating that an officer is in distress or is need of assistance, and it is designated the highest priority level.

48.     Upon information and belief, Sergeant McEntire heard the "Signal 13" and turned on his emergency lights and drove towards the scene.

49.     Upon information and belief, Officers Netherton and Officer Gillum were responding to another call related to a domestic disturbance when they received and responded to the Signal 13.

50.     Upon information and belief, Taylor Lowery drove approximately a half mile down the street to the Kwik Shop where he exited his vehicle.

51.     Upon information and belief, Sergeant McEntire turned off his lights as he saw Taylor Lowery's car approaching and he followed behind Lowery.

52.     Upon information and belief, as Lowery arrived at the Kwik Shop, Sergeant McEntire and Detective Wall followed behind.

53.     Upon information and belief, Lowery attempted to run towards a parked car as he exited the black SUV.

54.     Upon information and belief, no individual was harmed by Taylor Lowery at the Kwik Shop.

55.     Upon information and belief, Sergeant McEntire and Detective Wall were not wearing body-worn police cameras.

56.     Upon information and belief, Detective Wall radioed that he believed Taylor Lowery was committing a carjacking.

57.     Upon information and belief, Sergeant McEntire and Detective Wall parked their police car behind a vehicle near Taylor Lowery.

58.     Upon information and belief, Sergeant McEntire and Detective Wall then exited their vehicle with their weapons drawn.

59.     Upon information and belief, when Sergeant McEntire and Detective Wall exited their vehicle, they saw Taylor Lowery running and they discharged their weapons at Lowery.

60.     Upon information and belief, Taylor Lowery was not near Sergeant McEntire, Detective Wall, nor any other individual or vehicle when the police discharged their firearms.

61.     Upon information and belief, Taylor Lowery did not make physical contact or aggressive actions towards Sergeant McEntire nor Detective Wall before they discharged their weapons.

62.     Upon information and belief, Taylor Lowery was moving forward towards the gas pumps at the Kwik Shop at the time he was shot, and no individuals were near him.

63.     Upon information and belief, Taylor Lowery fell in the parking lot, dislodging the

knife and wrench from his hands, as Detective Wall and Sergeant McEntire shot at him.

64.     According to statements released or provided by the Topeka Police Department and/or District Attorney Michael Kagay to news outlets after this incident, the Officer Defendants successfully disarmed Lowery of the knife in the Kwik Shop parking lot.

65.     Upon information and belief, Officer Good and Officer Netherton arrived at the gas station and ran to the scene with their service weapons drawn, seconds after Sergeant McEntire and Detective Wall discharged their firearms.

66.     Upon information and belief, as Officer Netherton arrived at the scene, Taylor Lowery was on the ground and did not have anything in his hands.

67.     Upon information and belief, Officer Gillum arrived just seconds after Officer Netherton.

68.     Upon information and belief, when Officer Good arrived on the scene, there were multiple officers already surrounding Taylor Lowery, who at that point had nothing in his hands.

69.     Upon information and belief, the wrench, specifically a socket wrench, formerly possessed by Taylor Lowery was lying on the ground between the officers and Lowery.

70.     Upon information and belief, Taylor Lowery never possessed the apparent knife again after the Officer Defendants successfully disarmed Lowery in the Kwik Shop parking lot.

71.     Upon information and belief, the apparent knife was lying next to Officer Gillum and Officer Netherton's feet on the ground.

72.     Upon information and belief, the knife was clearly visible on the ground, where it was far out of reaching distance from Taylor Lowery.

73.     Upon information and belief, Sergeant McEntire attempted to bump/grab Taylor Lowery.

74.     When Sergeant McEntire tried to grab Taylor Lowery, there was no wrench, knife,

nor other object in Lowery's hands.

75.     Sergeant McEntire made physical contact with Lowery by physically bumping Lowery, causing Lowery to lose his balance and stumble backwards.

76.     Upon information and belief, Lowery then bent over to pick up the wrench that had been dislodged from his hand and fell to the ground.

77.     Upon information and belief, as Lowery took a slight step backwards away from the officers, not yet able to assume an upright stance, Defendant Netherton began discharging his weapon.

78.     Upon information and belief, the only command Officer Netherton gave to Taylor Lowery was to get on the ground, which he commanded as he began discharging his police weapon.

79.     Upon information and belief, after Officer Netherton discharged his weapon, Officers Good, Officer Gillum, Detective Wall, and Sergeant McEntire all discharged their police weapons at Taylor.

80.     Upon information and belief, Officer Netherton was on the scene for fewer than thirteen (13) seconds before he began to discharge his service weapon.

81.     Upon information and belief, at the time Taylor Lowery was shot, there were multiple officers on each side of Lowery giving commands.

82.     Upon information and belief, Taylor Lowery did not charge, take steps toward, nor make any aggressive actions towards the officers at the time they discharged their weapon.

83.     Upon information and belief, Taylor Lowery never said a word to the police officers at the Kwik Shop during the incident.

84.     No members of the public were near Lowery at the time he was shot.

85.     Taylor Lowery was not facing Officer Gillum nor Officer Netherton; Lowery did not pose a threat to the Officer Defendants, and Lowery did not take any aggressive actions toward

11

officers prior to discharging their service weapons.

86.    Upon information and belief, the only physical contact that law enforcement made with Taylor Lowery during the incident was when Sergeant McEntire intentionally bumped against him while Lowery was unarmed.

87.    Contrary to reports from and/or statements by the City of Topeka, upon information and belief, Taylor Lowery did not raise a knife above his head and charge at the Officer Defendants at the time Officers began discharging their service weapons at Lowery.

88.    Upon information and belief, when this incident occurred Officer Gillum was in his probationary period as a new officer.

89.    Upon information and belief, Taylor Lowery suffered forty-one (41) gunshot wounds.

90.    Upon information and belief, at the time police discharged their weapons, they knew that Lowery was not holding a knife.

91.    Upon information and belief, Taylor Lowery did not point a weapon at the Officer Defendants nor did Lowery pose an imminent threat to the safety of the public or the Officer Defendants at the time the Officer Defendants began shooting at Lowery.

92.    Taylor Lowery was pronounced dead at the scene.

93.    Upon information and belief, Taylor Lowery was either unarmed and/or was holding a wrench at the time he was shot.

94.    Upon information and belief, after they shot Taylor Lowery, the Defendant Officers confirmed and/or stated on scene that Lowery did not have any lethal weapons.

95.    Upon information and belief, the wrench in Taylor Lowery's hand was clearly visible and the officers instructed him to drop the wrench so they could provide him with medical assistance after they'd shot him dozens of times.

96.    Upon information and belief, the entire encounter between the Officer Defendants and Taylor Lowery, from when officers first arrived at the residence until Lowery was bleeding out on the ground of the Kwik Shop, lasted approximately six (6) minutes.

97.    Deadly force is reasonable only if the officer had probable cause to believe that the suspect posed a significant threat of death or serious physical injury to the officer or others. There was not probable cause to believe that Taylor Lowery posed a significant threat of death or serious physical injury to the officers or others.

98.    Upon information and belief, each officer at the scene was carrying non-lethal force including, but not limited to, pepper sprays and tasers but no officer attempted to use non-lethal force prior to fatally shooting Taylor Lowery.

99.    Upon information and belief, no Topeka Police Department officer on scene ever communicated that Taylor Lowery was carrying a wrench, even though multiple officers had observed Taylor Lowery with a wrench and discussed the same.

100.    Upon information and belief, the offense Taylor Lowery committed on October 13, 2022, was running from police.

## COUNT I - EXCESSIVE USE OF FORCE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION

101.    Plaintiffs hereby incorporate by reference the allegations and averments contained in Paragraphs 1 through 100 as though fully set forth herein.

102.    The Officer Defendants' conduct as described above constitutes actions that shock the conscious under the Fourth and Fourteenth Amendments of the United States Constitution and violated clearly established constitutional and statutory rights. The conduct of the Officer Defendants was objectively unreasonable.

103.    Acting within the course and scope of their employment with the Topeka Police

Department and under color of state law, the Officer Defendants – without just cause or provocation and with the intent to cause serious bodily harm or death – assaulted, battered, and killed Taylor Lowery by discharging their department-issued firearms and shooting Lowery, causing forty-one (41) gunshot wounds and his death.

104.    Instead of taking appropriate measures to assess the situation before escalating to deadly force in a public location, the Officer Defendants shot Taylor Lowery multiple times and watched him die on the ground.

105.    The Officer Defendants lacked probable cause to kill Taylor Lowery because Lowery did not pose significant threat of death or serious physical injury to the Officer Defendants nor the public.

106.    In drawing their firearms and shooting and killing Taylor Lowery, the Officer Defendants used more force than was reasonably necessary.

107.    The Officer Defendants violated Taylor Lowery's Fourth and Fourteenth Amendment rights in one or more of the following respects:

a.    The use of deadly force was excessive and not objectively reasonable as Taylor Lowery did not pose a significant threat to the Officer Defendants or the public, and the Officer Defendants shot and killed him;

b.    The use of force was excessive because at no time did Taylor Lowery threaten the Officer Defendants, and he did not commit a felony or misdemeanor which warranted the use of deadly force.

108.    The conduct of the Officer Defendants as described above deprived Taylor Lowery of his right to be secure in his person against unreasonable searches and seizures under the Fourth Amendment to the United States Constitution and his right not to be deprived of life, liberty, or property without due process of law and to be accorded equal protection of the law as guaranteed

to him under the Fourteenth Amendment to the United States Constitution.

109.    As a direct and proximate result of the unlawful conduct of the Officer Defendants, Taylor Lowery was caused to suffer severe pain, mental anguish, and an agonizing death.  As a result of Taylor Lowery's death, Plaintiff L.L. has been deprived of the Taylor Lowery's services, society, companionship, comfort, instruction, guidance, counsel, training, familial support, love, affection, financial support, and income.

110.    The conduct of the Officer Defendants was reckless, malicious, wanton, willful and violated Taylor Lowery's constitutional rights; as such, an award of punitive damages is necessary to punish the Officer Defendants, to deter others from the same or similar transgressions in the future, and to protect public safety.

111.    The Officer Defendants knew that Taylor Lowery had a clearly established right to be secure in his person against unreasonable seizures under the Fourth Amendment of the United State Constitution and his right not be deprived of life, and they also knew that by shooting Lowery while he was bending over to collect his wrench and not posing a significant threat to the Officer Defendants or the public, they were depriving him of those rights.

WHEREFORE, Plaintiffs request judgment for general, special, and punitive damages in a sum that this Court may deem just and reasonable, for costs of the suit and attorneys' fees, and for such other relief as the Court may deem just and equitable.

## COUNT II - WRONGFUL DEATH

**(Defendant Officers Good, Netherton, Detective Wall, Gillum, and Sergeant McEntire)**

112.    Plaintiffs hereby incorporate by reference the allegations and averments contained in Paragraphs 1 through 111 as though fully set forth herein.

113.    Plaintiff L.L., by and through her next friend, maintains this action for wrongful death pursuant to K.S.A. §60-1901 *et. seq.* on behalf of all the heirs at law of Taylor Lowery who

have sustained loss by reason of his death.

114.    The Officer Defendants intentionally discharged their firearms without justification, causing an unreasonable apprehension of harm and death to Taylor Lowery.

115.    The Officer Defendants fired their weapons at Taylor Lowery without justification, intentionally and wrongfully causing the death of Taylor Lowery.

116.    The Officer Defendants caused an offensive bodily contact with Taylor Lowery by shooting and killing him.

117.    The Officer Defendants were not acting in lawful self-defense.

118.    In drawing their firearms and shooting Taylor Lowery, the Officer Defendants used more force than was reasonably necessary.

119.    The use of force by the Officer Defendants was unjustified in that they failed to make any attempt to use non-lethal means to resolve or de-escalate the situation.

120.    As a direct result of this intentional tort by the Officer Defendants, Plaintiffs have sustained damage including but not limited to loss of consortium, companionship, comfort, instruction, guidance, counsel, training, and financial support in addition to funeral expenses for the Taylor Lowery.

121.    Taylor Lowery also endured pain and suffering between the time that the first bullet penetrated his body and the time of his death. Plaintiffs are entitled to a claim for damages based upon this pain and suffering, all pursuant to K.S.A. §60-1901 et seq.

122.    The Officer Defendants actions were willful, wanton, or malicious and constituted gross misconduct, and demonstrated a conscious and reckless disregard or indifference for human life and the rights of both Taylor Lowery and Plaintiffs; therefore, an award of punitive damages is necessary to punish the Officer Defendants and deter others from the same or similar transgression in the future.

WHEREFORE, Plaintiffs request judgment for general, special, and punitive damages in a sum that this Court may deem just and reasonable, for costs of the suit and attorneys' fees, and for such other relief as the Court may deem just and equitable.

## COUNT III - DELIBERATELY INDIFFERENT POLICIES, PRACTICES, CUSTOMS, TRAINING AND SUPERVISION IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENT

### (The City of Topeka)

123.    Plaintiffs hereby incorporate by reference the allegations and averments contained in Paragraphs 1 through 122 as though fully set forth herein.

124.    The City of Topeka had in effect, both prior to and at the time that the events alleged in this Complaint occurred, policies, practices, patterns of conduct or customs which operated to deprive Taylor Lowery of his constitutional rights.

125.    The City is liable under 42 U.S.C. §1983 because their policies, customs and practices including the retention, training, discipline and supervision of law enforcement encourage and allowed the Officer Defendants to violate the constitutional rights of Taylor Lowery and further demonstrates deliberate indifference to Taylor Lowery's right to be free from unreasonable searches and seizures under the Fourth Amendment to the United States Constitution and his right not to be deprived of life, liberty or property without due process of law and to be accorded equal protection of the law as guaranteed to him under the Fourteenth Amendment to the United States Constitution.

126.    All the acts or omissions of the Officer Defendants took place under color of state law pursuant to, acting upon, and in concert with the policies, practices, procedures, patterns, decisions, instructions, orders and customs of the City and its members.  The City is liable for damages caused by their respective employees and the Officers Defendants' intentional, wrongful, reckless, and negligent acts or omissions while the employees and officers were acting under color of state law and while they were acting within the course and scope of their employment with the

City.  All these acts or omissions took place under circumstances where the City, as well as the Officer Defendants, are liable as governmental entities, employees and sworn law enforcement officers in the State of Kansas.  The City's liability is based upon allegations described in this Complaint all of which demonstrate patterns of behavior and deliberate indifference to the issues raised in this Complaint and to the rights of citizens, all of which led to deprivations of rights, privileges and immunities secured by the federal and states constitution as well as federal and state laws.

127.    The City engaged in unlawful and unconstitutional policies, practices, and customs, including but not limited to, the following:

    a.  Violation and deprivation of constitutional rights as set forth in this Complaint;

    b.  Inadequate training and instruction of employees on the proper use of police power, proper seizure, proper searches, use of deadly force and investigation of alleged crime in the State of Kansas;

    c.  Failing to supervise and monitor officers in training;

    d.  Inadequate supervision of employees as to the proper use of police power, proper seizures, proper searches, use of deadly force and investigation of crime in the State of Kansas;

    e.  Inadequate discipline of employees as to the proper use of police power, proper seizures, proper searches, use of deadly force and investigation of crime in the State of Kansas;

    f.  Inadequate supervision, training, and retention with resulting poor personnel decisions as to employees regarding the proper use of police power, proper seizure, proper searches, use of deadly force and investigation of alleged crime in the State of Kansas;

g.  Failure to take significant steps to prevent known risk of excessive use of force and improper seizure;

h.  Failure to properly train officers to de-escalate instead of escalating situations;

i.  Failure to adopt and properly implement policies regarding the de-escalation;

j.  Deliberate indifference to and conscious disregard for the high risk that law enforcement officers would improperly use their influence as law enforcement officers and/or fail to protect against such improper influence in violation of Taylor Lowery's rights; and,

k.  Failure to take significant steps to prevent a known risk of the wrongful use of deadly force.

128.    These actions, omissions, policies, practices, procedures, patterns, decisions, orders and customs of the City were the cause of constitutional and other violations described in this Complaint.  These interrelated policies, practices, and customs, separately and together, were implemented intentionally to deprive individuals, including Taylor Lowery, of their constitutional rights or, at the very least, were implemented with recklessness or deliberate indifference to the rights of individuals and were a direct and proximate cause of the constitutional violations as set forth in this Complaint.

129.    The City ratified and implemented, before and during the relevant period, each of the policies, practices, patterns of conduct and customs described herein. The City's custom/practice was so well settled as to constitute custom or usage with force of law, authorizing the use of deadly force was an impetus for the shooting and violent death of Taylor Lowery.

130.    At the time of the events described in this Complaint, Taylor Lowery had a clearly established constitutional right under the Fourth Amendment to be free from unreasonable searches and seizures and a right to be free from excessive force by law enforcement, guaranteed to him

under the Fourteenth Amendment to the United States Constitution.

131.  Defendants knew that Taylor Lowery had a clearly established right to be secure in his person against unreasonable seizures under the Fourth Amendment of the United State Constitution as well as a right to not be deprived of his life, and they also knew that by shooting Taylor Lowery when he was unarmed, they were depriving him of those rights.

132.  As a direct result of the Defendants' conduct, Plaintiffs are entitled to monetary relief for their damages.

WHEREFORE, Plaintiffs request judgment for general, special, and punitive damages in a sum that this Court may deem just and reasonable, for costs of the suit and attorneys' fees, and for such other relief as the Court may deem just and equitable.

## COUNT IV – ASSAULT AND BATTERY
### (The Officer Defendants)

133.  Plaintiffs hereby incorporate by reference the allegations and averments contained in Paragraphs 1 through 132 of their Complaint as though fully set forth herein.

134.  Defendants Officer Good, Officer Gillum, Officer Netherton, Detective Wall, and Sergeant McEntire purposely and intentionally shot at Taylor Lowery resulting in his death.

135.  The Officer Defendants were acting in concert at the time they shot Taylor Lowery.

136.  The Officer Defendants made offensive bodily contact with Taylor Lowery when they shot and killed him.

137.  The Officer Defendants' offensive bodily contact caused injury to Taylor Lowery including, but not limited to, his death.

138.  The Officer Defendants' conduct was intentional and demonstrated a deliberate indifference and/or conscious disregard for Taylor Lowery's safety and wellbeing.

139.  The Officer Defendants acted with malice in that they intentionally, deliberately

20

and/or wantonly shot Taylor Lowery when he did not pose a threat to the Officer Defendants or the public.

140.    The conduct of the Officer Defendants was reckless, malicious, wanton, willful and an award of punitive damages is necessary to punish the Officer Defendants and to deter others from the same or similar transgression in the future.

WHEREFORE, Plaintiffs request judgment for general, special, and punitive damages in a sum that this Court may deem just and reasonable, for costs of the suit and attorneys' fees, and for such other relief as the Court may deem just and equitable.

## COUNT IV – ASSAULT AND BATTERY
### (The Officer Defendants)

141.    Plaintiffs hereby incorporate by reference the allegations and averments contained in Paragraphs 1 through 140 of their Complaint as though fully set forth herein.

142.    Officer Defendants, including Officer Good, Officer Gillum, Officer Netherton, Detective Wall, and Sergeant McEntire,   purposely and intentionally shot at Taylor Lowery resulting in his death.

143.    The Officer Defendants were acting in concert at the time they shot Taylor Lowery.

144.    The Officer Defendants made offensive bodily contact with Taylor Lowery when they shot and killed him.

145.    The Officer Defendants' offensive bodily contact caused injury to Taylor Lowery including but not limited to his death.

146.    The Officer Defendants' conduct was intentional and demonstrated a deliberate indifference and/or conscious disregard for Taylor Lowery's safety and wellbeing.

147.    The Officer Defendants acted with malice in that they intentionally, deliberately

and/or wantonly shot Taylor Lowery when he did not pose a threat to the Officer Defendants nor the public.

148.    The conduct of the Officer Defendants was reckless, malicious, wanton, and/or willful, and an award of punitive damages is necessary to punish the Officer Defendants and to deter others from the same or similar transgression in the future.

WHEREFORE, Plaintiffs request judgment for general, special, and punitive damages in a sum that this Court may deem just and reasonable, for costs of the suit and attorneys' fees, and for such other relief as the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demands a jury trial on all issues so triable.

Respectfully submitted,

*/s/ LaRonna Lassiter Saunders*
LaRonna Lassiter Saunders        KS #21371
Lassiter Law and Justice LLC
7111 W. 151st Street, Suite #142
Overland Park, KS 66223
Telephone: (913) 386-7893
Email:attorney@lassiterlawandjustice.com


*/s/ Alexander Hartley*
Alexander Hartley            KS #290806
The Hartley Law Firm
908 Baltimore Avenue, Suite 304
Kansas City, MO 64105
Telephone: (816) 451-0909
Email: alec@thehartleylawfirm.com


*/s/ Claire Wyatt*
Claire Wyatt            KS # *pro hac vice*
Wyatt Law, LLC
908 Baltimore Avenue, Suite 301
Kansas City, MO 64105
Telephone: (816) 651-5858
Email: claire@wyattlawkc.com
***ATTORNEYS FOR PLAINTIFFS***

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of January 2025, I electronically filed the above and foregoing by using the CM/ECF system which will send a notice of electronic filing to registered counsel.

CITY OF TOPEKA LEGAL DEPARTMENT
215 SE 7th Street, Room 353
Topeka, KS 66603
Phone: 785-368-3883
Fax: 785-368-3901
COUNSEL FOR DEFENDANTS


*/s/ LaRonna Lassiter Saunders*
***ATTORNEY FOR PLAINTIFFS***