UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DA'MABRIUS DUNCAN, as Special Administrator of the Estate of Taylor Lowery, et al.,

Plaintiffs,

v.

CITY OF TOPEKA, KANSAS, et al.,

Defendants.

Case No. 25-2700-DDC-ADM

**MEMORANDUM AND ORDER**

This case arises out of the shooting of Taylor Lowery ("Lowery") by Topeka police officers in 2022. It is now before the court on plaintiffs' motion for leave to file a second amended complaint. (ECF 73.) By way of the motion, Da'Mabrius Duncan, as the special administrator of Lowery's estate, and L.L., Lowery's minor daughter and heir-at-law, through Duncan as her next friend (together, "plaintiffs"), seek leave to amend the complaint to (1) drop three claims, (2) separate their failure-to-intervene claim into two separate claims (thereby adding a claim), and (3) add factual allegations in support of existing claims. Also before the court is a motion brought by a subset of defendants—Justin Good, Bradley Netherton, Malcolm Gillum, Scott McEntire, and Alex Wall (together, "the moving defendants")—to strike or, in the alternative, seal two exhibits to plaintiffs' motion. (ECF 87.) For the reasons discussed below, plaintiffs' motion for leave to file a second amended complaint is granted and the moving defendants' motion to strike or seal exhibits is denied.

## I. BACKGROUND

In the early morning hours of October 13, 2022, Topeka Police Department officers responded to a domestic-disturbance call at a Topeka residence. Lowery was at the residence and

fled. Two officers followed Lowery, who drove to a gas station parking lot. When Lowery, holding a knife, moved in one officer's direction, both officers shot him multiple times. The volley of shots caused Lowery to fall to the ground momentarily, but he got back up, holding a wrench. Around the same time, additional officers arrived. Multiple officers shot Lowery in a second volley of shots. Lowery died at the scene from gunshot wounds.

On August 1, 2024, plaintiffs filed suit in this court, asserting claims under 42 U.S.C. § 1983 based on the officers' use of force ("the first suit"). Case No. 24-cv-2336-DDC-ADM. Plaintiffs voluntarily dismissed the first suit on June 30, 2025. Plaintiffs then retained an entirely new legal team.

On November 30, 2025, plaintiffs refiled the lawsuit—*i.e.*, the present one—asserting the same factual allegations and claims as in the first suit. (ECF 2.) The court conducted a scheduling conference on April 2, 2026, during which plaintiffs' new counsel noted they were in the process of reviewing past discovery and anticipated filing a motion for leave to amend the complaint. (ECF 31.) The scheduling order set an April 3 deadline for any motion for leave to amend the pleadings, and plaintiffs filed a motion for leave to file an amended complaint on that date. (ECF 32.) The court granted plaintiffs' motion, and plaintiffs filed their first amended complaint on May 12. (ECF 37, 38.) The first amended complaint asserts claims against the City of Topeka ("the City") and six individual police officers.

On May 18, plaintiffs received the reports of their two retained expert witnesses. Brian McMaster, a medical doctor, provided an opinion on Lowery's cause of death. (ECF 73-2.) Christopher Darcy, a police-practices expert, provided an opinion on the officer's use-of-force tactics—particularly with respect to the second volley of shots, officers rendering of aid to Lowery

after the second volley of shots, and the Topeka Police Department's training and supervision. (ECF 73-3.)

On May 26, defendants filed motions to dismiss the first amended complaint. (ECF 42, 44.) Plaintiffs retained additional counsel in June.

On June 29, plaintiffs filed the present motion for leave to file a second amended complaint. (ECF 73.) Described in broad terms, plaintiffs' motion is premised on information they learned from the experts' reports, a deeper review of documents produced in discovery, and alleged pleading deficiencies asserted in the City's motion to dismiss. Plaintiffs attached their experts' reports as exhibits to their motion. (ECF 73-2 and 73-3.)

On July 13, the moving defendants filed their motion to strike the experts' reports from the record or, alternatively, to seal them from public view. (ECF 87.) The moving defendants argue the substance of the reports "serves no meaningful purpose" to the court's determination of plaintiffs' motion and "their inclusion serves only to inject immaterial, irrelevant, and prejudicial hearsay into the public record." (*Id.* at 2.)

## II. MOTION FOR LEAVE TO AMEND COMPLAINT (ECF 73)

Plaintiffs move for leave to file a second amended complaint. Where, as here, the scheduling-order deadline for seeking leave to amend has expired, the party moving to amend must (1) demonstrate good cause for modifying the scheduling order under Federal Rule of Civil Procedure 16(b)(4), and (2) satisfy the standards for amendment under Federal Rule of Civil Procedure 15(a). *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n,* 771 F.3d 1230, 1240 (10th Cir. 2014). Whether to grant a motion to amend is within the court's sound discretion. *Id.*

### A. There is Good Cause to Amend the Scheduling Order Under Rule 16(b)(4)

A scheduling order "may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). "In practice, this standard requires the movant to show the scheduling deadlines cannot be met despite the movant's diligent efforts." *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 988 (10th Cir. 2019) (quoting *Gorsuch*, 771 F.3d at 1241). "Trial courts have considerable discretion in determining what kind of showing satisfies this good cause standard." *Id.* (quoting 3 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE - CIVIL § 16.14[1][b] (3d ed. 2019)). Courts usually find good cause "when the moving party has been generally diligent, the need for more time was neither foreseeable nor its fault, and refusing to grant the continuance would create a substantial risk of unfairness to that party." *Id.* The "good cause requirement may be satisfied [when a party] learns new information through discovery." *Gorsuch*, 771 F.3d at 1240. Finally, in determining whether a party has demonstrated good cause, the court is mindful that its "focus is on diligence, not perfection." *See Beauford v. Denver Pub. Schs.,* No. 1:25-CV-00590-SKC-SBP, 2026 WL 1723956, at *5 (D. Colo. Mar. 9, 2026) (citing *Schacht v. Collins*, No. 23-cv-00709-PAB-SBP, 2025 WL 2778158, at *3 (D. Colo. Sept. 30, 2025) and *Culver v. Saint Francis Health Sys., Inc.,* No. 24-CV-0078-CVE-MTS, 2025 WL 2848493, at *3 (N.D. Okla. Oct. 8, 2025)).

Plaintiffs have demonstrated good cause to amend the scheduling order to allow the filing of their proposed second amended complaint. First, as to the new factual allegations related to their claims against the City for failure to train, supervise, and discipline employees, plaintiffs explain that they did not understand the significance of the proposed new facts until Darcy, their police-practices expert, identified the City's training materials as deficient and likely to have contributed to Lowery's injuries. The fact that information is revealed or made relevant through

expert analysis can satisfy the good-cause standard. *See, e.g.*, *Tomelleri v. Zazzle, Inc.*, No. 13-cv-2576-EFM-TJJ, 2014 WL 6895614, at *2 (D. Kan. Dec. 5, 2014) (finding good cause to grant leave to amend complaint three months past the scheduling-order deadline where plaintiff did not learn of information to support new claim until expert analysis); *Culver v. Saint Francis Health Sys., Inc.*, No. 24-CV-0078-CVE-MTS, 2025 WL 2848493, at *2 (N.D. Okla. Oct. 8, 2025) (finding good cause for leave to amend based on plaintiff's discovery of the existence of problematic policy as a result of expert analysis); *City of Las Cruces v. United States*, No. CV 17-809 JCH/GBW, 2021 WL 1090040, at *2 (D.N.M. Mar. 22, 2021) (court allowed plaintiff leave to amend to add new claim two years after the deadline because the claim was not viable until after expert analysis). Plaintiffs did not receive the expert's report until after the scheduling-order deadline for seeking leave to amend, and plaintiffs sought amendment expeditiously after they learned from the report that certain additional facts may be significant. In addition, plaintiffs note that after the scheduling-order deadline for amendment had passed, the City filed a motion to dismiss asserting that plaintiffs' first amended complaint failed to allege facts sufficient to support a failure-to-train claim, and the proposed second amended complaint addresses those concerns. Permitting amendment to allow plaintiffs to address arguments raised in motions to dismiss is a common practice to ensure claims are decided on their merits, rather than on procedural missteps.

Similar reasons also support a finding that plaintiffs have been diligent in asserting their proposed new factual allegations and failure-to-intervene claim against defendant Shawn Doiron. Plaintiffs admit that prior to the deadline for amending pleadings they had evidence of Doiron's actions at the scene, but it was not until they later received the reports from McMaster and Darcey that they learned information to support their failure-to-supervise and failure-to-intervene-to-provide-medical-care claims against Doiron. For example, plaintiffs knew that officers performed

chest compressions at the scene, but McMaster opines that Lowery would have had a better chance at successful resuscitation if they had they done CPR with rescue breathing. (ECF 73-2 at 3.)

Finally, as to other newly proposed factual allegations, plaintiffs state that while they possessed discovery from the first suit prior to the amendment deadline, it took time for their new counsel to closely review the discovery, given the large volume. The court finds this reason also supports a finding of good cause to modify the scheduling order to permit leave to amend. *See ImprimisRx, LLC v. OSRX, Inc.,* No. 21-CV-01305-BAS-DDL, 2022 WL 15524584, at *2 (S.D. Cal. Oct. 27, 2022); *Bodine v. salesforce.com, Inc.*, No. CV 19-4-BU-BMM-KLD, 2019 WL 9465819, at *3 (D. Mont. Nov. 26, 2019).

**B. Amendment is Allowed under Rule 15(a)(2)**

The court next considers whether to grant leave to amend under FED. R. CIV. P. 15(a). Rule 15(a)(2) directs the court to "freely give leave when justice so requires." In freely allowing leave to amend, the court provides litigants with "the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Warnick v. Cooley*, 895 F.3d 746, 755 (10th Cir. 2018) (quoting *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006)). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962). Practically speaking, the party opposing a motion to amend bears the burden to demonstrate why the amendment should not be permitted. *See Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 (10th Cir. 2010) (holding that in the absence of such a showing, amendment should be allowed).

Defendants[1] oppose amendment on the grounds of undue delay, bad faith and prejudice, and futility. The court will address the arguments in turn.

Undue Delay

To the extent defendants argue plaintiffs unduly delayed in seeking amendment, the court disagrees for the reasons stated under the Rule 16(b)(4) analysis above. As defendants point out, the court's order granting plaintiffs leave to file a first amended complaint stated that "the court does not envision permitting any further amendments." (ECF 37, at 5.) But plaintiffs have justified the timing of their subsequent request to amend. Plaintiffs' experts have now opined and plaintiffs' new counsel has had the opportunity to get through voluminous discovery, so now is the time for plaintiffs to clarify some of their claims.

Bad Faith/Prejudice

Defendants next assert that plaintiffs acted in bad faith by waiting to seek amendment until after defendants filed motions to dismiss, "resulting in prejudice to Defendants." (ECF 88, at 4.) The court finds no merit in this position. First, because the Tenth Circuit has recognized a preference for cases to be decided on their merits rather than on procedural niceties, it is common in this district for courts to grant leave to file an amended complaint to address issues raised in a motion to dismiss. *See, e.g., Tao v. University of Kan.,* No. 25-2005-JWB-BGS, 2025 WL 1755195, at *3 (D. Kan. June 25, 2025) ("Professor Tao makes clear that the primary reason for amendment is to forestall dismissal. The Court agrees that he should be given an opportunity to refine his pleading to address issues raised in the motion to dismiss."); *Das v. Kansas State Univ.*, No. 21-4044-DDC-ADM, 2022 WL 1001063, at *2 (D. Kan. Apr. 4, 2022) ("The court's ruling

[1] The City did not join the individual defendants' response in opposition to plaintiffs' motion, but the court nonetheless uses the term "defendants" for simplicity.

granting plaintiff leave to file his Amended Complaint renders the motions to dismiss moot."); *Birdsong v. Unified Gov't of Wyandotte Cnty./Kansas City, Kan.*, No. 13-2090-JAR, 2014 WL 105509, at *1 (D. Kan. Jan. 10, 2014) (granting in part motion for leave to amend complaint filed after motions to dismiss, then denying motions to dismiss as moot). Defendants' suggestion that this practice is somehow unusual or in bad faith is not supported. Under the present circumstances, the court does not view plaintiffs as "present[ing] 'theories seriatim' in an effort to avoid dismissal." *Minter*, 451 F.3d at 1206.

Second, defendants have not demonstrated that they will be *unduly* prejudiced by the filing of plaintiffs' second amended complaint. "Under Rule 15, 'undue prejudice' means undue difficulty in prosecuting or defending a lawsuit as a result of a change of tactics or theories on the part of the movant." *Clark v. Newman Univ., Inc.,* No. 19-1033-JWB, 2021 WL 2024891, at *6 (D. Kan. May 21, 2021) (cleaned up); *Stewart v. United Parcel Servs., Inc.*, No. 20-2461-JAR-GEB, 2021 WL 6134675, at *3 (D. Kan. Dec. 29, 2021) (cleaned up). "While any amendment invariably causes some 'practical prejudice,' undue prejudice means the amendment would work an injustice to [the non-movant]." *Stewart*, 2021 WL 6134675, at *3. Defendants complain that they will need to expend resources to prepare new motions to dismiss, but the court views this as practical prejudice only. The proposed second amended complaint does not expand the litigation beyond the incident already before the court. Moreover, the most significant amendments to the complaint are as to the claim and allegations against Dorion, but discovery has been stayed as to him. (ECF 63.) As to the other defendants, at the time the motion was filed in late June, three months remained in the discovery period, giving them ample time to pursue discovery on the clarified claims and allegations without undue prejudice. *See Clark.,* 2021 WL 2024891, at *6 (sustaining objection to magistrate judge's finding of undue prejudice where discovery was open

at the time motion was filed and nonmovant was on notice of the proposed amendment for almost three months).

Futility

Finally, defendants also argue the court should deny plaintiffs leave to amend because the proposed amendments are futile. Specifically, defendants assert that the claims in the proposed second amended complaint are barred by the statute of limitations and would therefore be subject to dismissal. *See Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Inv'r's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999) ("A proposed amendment is futile if the [pleading], as amended, would be subject to dismissal."). Defendants note that this is the same argument they asserted in opposing plaintiffs' motion for leave to file the first amend complaint. The court finds it prudent to take the same approach here as it did in addressing this futility argument previously. That is, given that plaintiffs' counter arguments against dismissal are not facially frivolous, the court will permit amendment and allow defendants to renew their arguments in a dispositive motion. (*See* ECF 37, at 7.)

In the end, the court is mindful of Rule 15's dictate to freely give leave to amend. Defendants have not demonstrated that this is one of the rare instances in which amendment should be denied. Thus, the court exercises its discretion to grant plaintiffs leave to file a second amended complaint.

## III. MOTION TO STRIKE OR SEAL EXHIBITS (ECF 87)

The moving defendants ask the court to either strike the experts' reports from the record or, alternatively, seal them from public view. While the court will not strike the reports nor seal them in their entirety, the court will give the moving defendants another opportunity to narrowly tailor their request to seal.

The moving defendants ask the court to strike the exhibits under Federal Rule of Civil Procedure 12(f). Rule 12(f) permits a court to "strike from a *pleading* . . . any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f) (emphasis added). Although Rule 12(f) does not apply to exhibits to motions, the court nonetheless recognizes the court's inherent authority to control its docket and strike filings. *See Bunn v. Perdue*, 966 F.3d 1094, 1099 (10th Cir. 2020) (*quoting Ysais v. N.M. Judicial Standard Comm'n,* 616 F. Supp. 2d 1176, 1184 (D.N.M. 2009)) (holding that "motions, briefs, and memoranda may not be attacked by a motion to strike" unless their filing is "not allowed by local rule"); *Fuller v. Dep't of Child. & Fams*., No. 16-2415-DDC-JPO, 2019 WL 4573416, at *2 (D. Kan. Sept. 20, 2019), *aff'd*, 805 F. App'x 601 (10th Cir. 2020) ("Our court has refused to apply Rule 12(f) to strike a reply and exhibits filed with the reply because this Rule applies only to 'pleadings.'"). Motions to strike, however, "generally are disfavored." *Rowan v. Sunflower Elec. Power Corp*., No. 15-CV-9227-JWL-TJJ, 2015 WL 8024320, at *1 (D. Kan. Dec. 4, 2015).

The moving defendants argue that Darcy and McMaster's expert reports are "wholly immaterial" to the questions before the court on plaintiffs' motion for leave to file an amended complaint. (ECF 87, at 4.) They assert that filing the full text of the reports served no legitimate purpose at this stage in the litigation and that plaintiffs filed the reports simply to degrade defendants' characters. The court disagrees. The substance of the expert reports are part of the reason why plaintiffs say they filed the motion to amend when they did. Indeed, the court relied on the reports in reaching its decision that good cause exists to allow plaintiffs to file an amended complaint after the scheduling-order deadline. So although the experts' reports might not be terribly pertinent in their sum total, they certainly are not immaterial. The court denies the moving defendants' request to strike them from the record.

The court also denies the moving defendants' alternate request to seal the experts' reports in full. As the moving defendants recognize, overcoming the public's right to judicial records is a high hurdle. "Courts have long recognized a common-law right of access to judicial records." *Mann v. Boatright*, 477 F.3d 1140, 1149 (10th Cir. 2007). As a result, "there is a 'strong presumption in favor of public access.'" *United States v. Pickard*, 733 F.3d 1297, 1302 (10th Cir. 2013) (quoting *Mann*, 477 F.3d at 1149). That "strong presumption" is heightened when the information subject to a seal or redaction request provides the basis for a court's adjudication of the merits of the litigation. *Id*. at 1302, 1305. To overcome the right of public access to judicial records, a party seeking to file documents under seal "must articulate a real and substantial interest that justifies depriving the public of access to the records that inform [the court's] decision-making process." *Williams v. FedEx Corp. Servs*., 849 F.3d 889, 905 (10th Cir. 2017) (quotation omitted).

The moving defendants argue Darcy and McMaster's expert reports are "irrelevant" and do not bear on the court's decision on plaintiffs' motion for leave to amend. But, as explained above, this premise is incorrect. The moving defendants have not articulated a basis that justifies sealing the reports in their entirety. Accordingly, the court denies the moving defendants' motion as to sealing, but without prejudice to refiling a motion that seeks redactions "narrowly tailored to the asserted confidentiality interest." D. Kan. Rule 5.4.2(c)(1). Any renewed motion must be filed within **5 calendar days** of this order and must accord with District of Kansas Rule 5.4.2(c).[2]

**IT IS THEREFORE ORDERED** that plaintiffs' motion for leave to file a second amended complaint (ECF 73) is granted. Plaintiffs must file the second amended complaint as a separate docket entry within **5 calendar days** of this order.

---

[2] Because the court has denied the moving defendants' motion to strike or seal, plaintiffs' motion for leave to file a response to the motion out of time (ECF 101) is denied as moot.

**IT IS FURTHER ORDERED** that the moving defendants' motion to strike or, in the alternative, to seal exhibits to plaintiffs' motion (ECF 87) is denied. However, to the extent the motion seeks to seal portions of the exhibits, it is denied without prejudice. The moving defendants may file a motion seeking to redact material in the exhibits within **5 calendar days** of this order.

**IT IS FURTHER ORDERED** that plaintiffs' motion for leave to file a response out of time to the moving defendants' motion to strike or seal (ECF 101) is denied as moot.

Dated August 27, 2026, at Kansas City, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge