UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DA'MABRIUS DUNCAN, as Special Administrator of the Estate of Taylor Lowery, et al.,

Plaintiffs,

v.

CITY OF TOPEKA, KANSAS, et al.,

Defendants.

Case No. 25-2700-DDC-ADM

**MEMORANDUM AND ORDER**

This case arises out of the shooting of Taylor Lowery by Topeka police officers in 2022. It is now before the court on the motion of defendants Justin Good, Bradley Netherton, Malcolm Gillum, Scott McEntire, and Alex Wall (together, "defendants")[1] to sanction plaintiffs' counsel for violating the parties' agreed protective order governing discovery. (ECF 67.) For the reasons discussed below, the court grants the motion for sanctions (though not every sanction defendants request), publicly admonishes plaintiffs' counsel for violating the agreed protective order, and awards defendants their attorneys' fees for bringing the motion.

## I. BACKGROUND

This case is a successor to Case No. 24-cv-2336-DDC-ADM (bearing the same caption), which plaintiffs voluntarily dismissed on June 3, 2025. In the first action, the court entered the parties' agreed protective order on December 26, 2024. (ECF 37 in Case No. 24-cv-2336-DDC-ADM.) The protective order permitted the parties to designate certain "body camera footage" and

[1] Although all defendants do not join in this motion, for simplicity, the court refers to the movants as "defendants" in this memorandum and order.

"personnel or employment files of any individual defendant," among other things, as confidential and protected from disclosure outside the lawsuit. (*Id.* ⁋ 2.) The parties could not, however, designate publicly available information as confidential. (*Id.*) The protective order further included a provision for any party "to challenge a confidentiality designation," which required the parties to continue treating designated materials as confidential until the court decided the challenge. (*Id.* ⁋ 8.) On December 27, 2024, defendants produced their personnel files, which included training slides, and bodycam footage to plaintiffs, marking them "Confidential Subject to Protective Order." No party has filed a motion challenging these confidential designations.

On December 31, 2024, LaRonna Lassiter Saunders, an attorney representing plaintiffs but who had not entered an appearance in the first case, disclosed confidential bodycam footage to two media outlets. (See ECF 56, at 2, and ECF 71, at 2, in Case No. 24-cv-2336-DDC-ADM.) Plaintiffs' counsel later acknowledged the disclosure violated the protective order, but suggested the violation was not willful or malicious, and reported that counsel took immediate steps to mitigate any harm from the disclosure. (ECF 77 in Case No. 24-cv-2336-DDC-ADM.) Although defendants originally moved to sanction plaintiffs' counsel for disclosure of the bodycam footage, defendants later withdrew the motion. (ECF 82 in Case No. 24-cv-2336-DDC-ADM.)

After dismissing the first case, plaintiffs retained an entirely new legal team, other than Lassiter Saunders, who remained on the team and refiled this case on November 30, 2025. Plaintiffs' current legal team includes Lassiter Saunders, Sarah Foster, and Lauren Bonds (an attorney with the National Police Accountability Project ("NPAP")), among others.

On April 2, 2026, the court conducted a scheduling conference and issued a scheduling order. The scheduling order notes that "[t]he parties agree that discovery from [the first] case carries over into this case." (ECF 31, at 4.) It further notes that the parties agreed and the court

ordered "that the protective order from the prior case applies equally in this case." (*Id.* at 6.) Thus, plaintiffs' new counsel has access to discovery produced in the first case and is subject to the terms of the protective order entered in the first case.

On May 15, the Topeka Capital-Journal newspaper published an online article stating that plaintiffs' legal team "provided copies of [the Topeka Police Department's] 'de-escalation training,' which tells police to treat parties with respect but also 'have a plan to kill them.'" (ECF 67-2, at 3.) The training document quoted in the article and reportedly produced by plaintiffs' counsel was a portion of Officer Netherton's training file that defendants had produced in the first case with a "confidential" marking. The article included quotes from Lassiter Saunders, Foster, and Bonds.

On May 19, the NPAP published an article on its public website, noting it was joining plaintiffs' legal team and including a hyperlink to the same confidential portion of Officer Netherton's training file. (ECF 67-1.) This article also stated that plaintiffs' "legal team . . . revealed . . . the City of Topeka's 'de-escalation training' tells police to 'have a plan to kill.'" (*Id.* at 3.) The "have a plan to kill" language was taken from Officer Netherton's confidential training file. The article included quotes from Foster and Bonds discussing the confidential training file.

On May 21, defendants informed plaintiffs that the NPAP article contained a hyperlink to documents labeled confidential under the protective order. (ECF 77-4, at 2.) Plaintiffs responded that defense counsel Cory Buck had represented in March that defendants' confidential designations were "applied across the board to all previously produced documents" and that the training slide "should never had been designated as confidential." (*Id.* at 3-4.) After the parties' attempt to resolve the dispute failed, the court convened a discovery conference on June 8. After hearing from the parties, the court granted defendants leave to file the current motion for sanctions. (ECF 59.)

## II. SANCTIONS

"Whether under Federal Rule of Civil Procedure 37(b) (for violation of a discovery-related order), Federal Rule of Civil Procedure 16(f) (violation of a pretrial order), or its inherent powers, the court is authorized to exercise its discretion in determining whether to impose sanctions for violations of stipulated protective orders." *CST Indus., Inc. v. Tank Connection, LLC*, No. 23-2339-JAR-RES, 2025 WL 660809, at *9 (D. Kan. Feb. 28, 2025) (quoting *Crocs, Inc. v. Joybees, Inc.,* No. 121-cv-02859GPGSBP, 2023 WL 8851997, at *3 (D. Colo. Dec. 8, 2023)). An appropriate sanction is "the least severe sanction adequate to deter and punish" misconduct. *White v. Gen. Motors Corp.*, 908 F.2d 675, 684 (10th Cir. 1990).

Defendants assert that plaintiffs' counsel violated the protective order by publicly releasing Officer Netherton's confidential training file. Defendants ask the court to sanction plaintiffs' counsel by (1) compelling them to submit an affidavit disclosing "the full extent of all confidential documents shared with unauthorized third parties" (2) "publicly admonishing" them for violating the protective order, and (3) "imposing such other and further sanctions or relief as the Court deems just and appropriate." (ECF 67, at 4.)

### A. Violation of Protective Order

The court easily finds that plaintiffs' counsel violated the protective order. Plaintiffs' counsel concede that they included a link to the training slide on the NPAP public website. (ECF 77, at 4.) They acknowledge that the slide was produced as part of Officer Netherton's personnel file and clearly marked confidential. Despite this awareness, counsel published the slide in a very public manner—including to a newspaper—in an obvious attempt to sway public opinion of the case in plaintiffs' favor.

Incredibly, plaintiffs' counsel do not accept responsibility for the violation or acknowledge having done anything wrong. Instead, they attempt to shift the focus of the dispute by alleging that defendants over-designated documents as confidential and that the training slide "plainly does not qualify as 'confidential'" under the protective order. (ECF 77, at 6.) Whether or not defendants appropriately designated the training slide as confidential is not relevant to the appropriateness of plaintiffs' counsels' actions. Paragraph 8 of the protective order gave plaintiffs a means to challenge designations, and plaintiffs did not avail themselves of the required procedure. Plaintiffs suggest that they reached an agreement with defense counsel in March that they need not formally seek de-designation of produced documents, but the only information plaintiffs offer in support of such an agreement is the fact that defense counsel approved the use of body-camera still shots in plaintiffs' amended complaint. (ECF 77-2 ⁋ 3.) Defendants deny that they agreed to anything beyond that, and plaintiffs have presented no record evidence to the contrary. Plaintiffs' arguments that defendants acted in "bad faith" and "caused" plaintiffs' counsels' violation of the protective order by over-designating documents as confidential (ECF 77, at 10) carries no weight. Accepting such an argument would allow a party to bypass the procedure set forth in Paragraph 8 of the court's form protective order and unilaterally determine the extent to which an opponent over-designated. And in any event, when plaintiffs agreed at the April scheduling conference that the protective order and discovery from the first case would apply in this case—despite any agreement reached amongst counsel the month prior—they agreed to abide by the disclosure prohibitions and Paragraph 8 of the protective order.

The court likewise finds nothing compelling in plaintiffs' "Notice of Subsequent Development" filed on July 8. (ECF 85.) The notice states that co-defendant City of Topeka publicly disclosed the same document—its own training slide—in a July 2 press conference.

During the conference, Topeka Police Chief Chris Vallejo displayed the slide "to address concerns that have been raised regarding a training slide that was used by the Topeka Police Department." (ECF 85-3.) This information is not relevant to the matter before the court. First, before the court are plaintiffs' counsels' actions and no one else's. Second, Topeka disclosed the document after plaintiffs' counsel made it available and the media reported on it—most likely in response to the media attention. At that time, the cat was already out of the bag.

### B. No Affidavit Necessary

Finding that plaintiffs' counsel violated the protective order, the court now considers what sanctions are "adequate to deter and punish" the misconduct. Defendants first ask the court to sanction plaintiffs' counsel by compelling them to submit an affidavit disclosing "the full extent of all confidential documents shared with unauthorized third parties." (ECF 67, at 3.) Because of circumstances that have changed since defendants filed the motion—such as the fact that Topeka has publicly released the slide and plaintiffs' have "initiat[ed] the process of formally de-designating" documents—this proposed sanction no longer fits the goal of deterring "further unauthorized disclosures and ensur[ing] compliance moving forward." (ECF 67, at 4.) The court declines to impose this proposed sanction.

### C. Admonishment

Next, defendants ask the court to publicly admonish plaintiffs' counsel for violating the protective order. A public admonishment is considered a measured sanction and appropriate when "severe sanctions are not needed." *Lawson v. Spirit Aerosystems, Inc.*, No. 18-1100-EFM-ADM, 2020 WL 3475231, at *2-3 (D. Kan. June 25, 2020) (citing cases). For example, in *Lawson*, counsel who violated a protective order "accepted responsibility" and the court found that "counsel knows he made a mistake, and the court's recognition of and admonishment for that mistake should

be sufficient to deter any further similar misconduct." *Id.* at 2. Similarly, in *CST Industries*, the court found publicly admonishing counsel for violating the protective order to be "the least severe sanction to deter and punish" where counsel "have taken responsibility for the violations and have put into place procedures to prevent further violations." 2025 WL 660809, at *9-10.

Here, the court agrees with defendants that publicly admonishing Bonds, Foster, and Lassiter Saunders for the protective order violations in May—both to the Topeka Capital-Journal and to readers of the NPAP website—is appropriate, particularly given that the violations were through public media channels apparently for the purpose of shaping public perception of the case. The court therefore admonishes plaintiffs' counsel for violating the protective order by publicly releasing, via media channels, the training slide produced by defendants as part of Officer Netherton's personnel file and clearly marked confidential. The court cautions plaintiffs' counsel to exercise care in preventing further violations of the protective order. Further violations will likely result in the imposition of more serious sanctions.

**D. Attorneys' Fees**

Where a party has failed to obey a discovery or other pretrial order, the court must order that party, its counsel, or both "to pay the reasonable expenses—including attorney's fees" incurred because of the violation unless the violation was "substantially justified or other circumstances make an award of expenses unjust." FED. R. CIV. P. 16(f), 37(b)(2)(C). Plaintiffs' counsels' failure to comply with the protective order was not substantially justified, for the reasons set forth above. Nor is an award of expenses to defendants unjust. Rather, the court finds the additional sanction of awarding defendants their attorneys' fees incurred in briefing the current motion is required to adequately to deter and punish plaintiffs' counsels' misconduct. The court reaches this conclusion primarily based on two factors.

First, this is not plaintiffs' counsels' first violation of the protective order. As noted above, in December 2024, Lassiter Saunders disclosed defendant's bodycam footage—marked as confidential under the protective order—to two media outlets. So defendants were already required to incur expenses related to plaintiffs' protective-order violations once before, including for appearing at a court hearing on January 30, 2025, and briefing a related motion for sanctions. (*See* ECF 54, 55, and 80 in Case No. 24-2336-DDC-ADM.) Although the court ultimately did not impose sanctions because defendants withdrew their sanctions request (ECF 82 in Case No. 24-2336-DDC-ADM), the court did admonish plaintiffs' counsel's actions during the January hearing and prohibited Lassiter Saunders participation in further discovery (*see* ECF 56 in Case No. 24-2336-DDC-ADM). This history makes plaintiffs' counsels' current protective-order violation more egregious.

Second, plaintiffs' counsel have failed to accept responsibility for the current violation, instead continuing to insist that they've done nothing wrong. This factor distinguishes the case from both *Lawson* and *CST Industries,* wherein the court decided not to award attorneys' fees because counsel had taken responsibility for the protective-order violations. In contrast, here, plaintiffs' counsel doubled down.

It is clear to the court that plaintiffs' counsel are not taking their obligations to comply with the protective order sufficiently seriously, so something beyond a public admonishment is warranted to serve as an effective deterrent against ongoing violations. Thus, the court awards defendants their reasonable attorneys' fees incurred in briefing the present motion. If the parties cannot reach agreement on the appropriate amount of fees to be paid, they should contact the undersigned judge's chambers to request a discovery conference.

**IT IS THEREFORE ORDERED** that defendants' motion to sanction plaintiffs' counsel for violating the parties' agreed protective order (ECF 67) is granted. The court admonishes Lassiter Saunders, Foster, and Bonds for violating the protective order and cautions plaintiffs' counsel to exercise care in preventing further violations of the protective order. The court also awards defendants their attorneys' fees incurred in bringing the motion, to be paid by Lassiter Saunders, Foster, and Bonds.

**IT IS SO ORDERED.**

Dated September 22, 2026, at Kansas City, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge